STATE v. VERNON H. LACKEY.

(Filed 14 January, 1960.)

**1. Criminal Law § 104—**

It is only in rare instances that a verdict may be directed for the State in a criminal presecution, and in the absence of an admission or presumption calling for an explanation on the part of a defendant it is error for the court to direct a verdict of guilty even though guilt may be inferred from defendant's own testimony.

**2. Criminal Law § 32—**

Defendant's plea of not guilty disputes the credibility of the evidence, even when uncontradicted, and the presumption of innocence can be overcome only by the verdict of a jury.

APPEAL by defendant from *Campbell, J.,* at February, 1959 Term, of CATAWBA.

Criminal prosecution upon a warrant issued out of the Municipal Court of the city of Hickory charging "that Vernon H. Lackey on or about the 23rd day of July, 1958, in Catawba County, Hickory Township, city of Hickory, did unlawfully and wilfully operate a motor vehicle upon the public highway while in an intoxicated condition against the statute" etc.

The record discloses that defendant plead not guilty, but after hearing the evidence the judge found him to be guilty; and judgment was signed ordering payment of a fine, and surrender of license for revocation. Defendant gave notice of appeal, and bond in sum of $300 was fixed.

In Superior Court defendant again pleaded not guilty. And upon trial there the State offered evidence tending to show in summary that on 23 July 1958, about ten minutes after midnight, a State Highway patrolman saw defendant operating a convertible automobile on Highway #70 traveling in a westerly direction toward Hickory; that defendant's car was weaving right much over the road all the way for a mile; that the officer stopped defendant, and smelled very strong

odor of alcohol on his breath, and he was in a staggering condition; and that the officer put him under arrest "for drunk driving."

The defendant testified briefly as follows: " * * * I am an automobile dealer— 64 years old * * * On July 23rd of last year I left my office about 6 P.M., and went home. When I got home I mixed a drink consisting of quinine water and vodka. The amount of vodka was a one-ounce jigger. I then sat down and read the paper and later * * * I made another one consisting of the same thing * * * About 7:00 I would say I drank both of these whiskies."

And defendant continued: "At that time I was under treatment from the doctor. I had had an injury to my back about a month earlier and it grew worse * * * so I went to Dr. Jim Keever, and he prescribed some form of pill, to relieve the pain, which I got and was taking * * * I took one of the pills at 6 o'clock when I got home. I think the directions read one every six hours as needed. So the pain was right much severe and about 7:00 I took another one, and about an hour later, around 8:00, I took another one. I didn't seem to get any relief as it read as needed, why, that's what I was doing. In all I took four of those things * * * in about three and a half hours * * * the last * * * around 9:30. I did not have anything else to drink. About 9:30 * * * I left * * * to get some sandwiches * * * and I went on uptown and by the garage and was there checking over some salesmen's reports for the day's work * * * I was there around an hour or a little longer * * * When I left that place I drove out to Mull's Motel to get the sandwiches. I don't remember leaving the garage but I do remember after I got out to Mull's Motel parking and standing there talking to some one. I got the sandwiches and something happened. I don't know what. It was a funny sensation * * * a feeling that didn't come from drinking liquor that came over me. I can't describe it. It seemed I was in a daze or something; I couldn't think. It was kind of a buzzy, dizzy feeling. I began to feel it when I was in the garage."

Then on cross-examination, defendant testified: "Yes, I was driving a car on this night on a public highway."

Then on re-direct examination, defendant stated: "I didn't know what was in those pills at the time. The doctor had not told me at the time what was in the pills."

Then Dr. J. W. Keever testified as witness for defendant in pertinent part as follows: " * * * I examined Mr. Lackey for a back injury about July 12, 1958 * * * I diagnosed his condition as lumbago and I gave him a prescription * * * that particular ailment is very painful * * * the box which you hand me * * * with some pills in it,

is the prescription in question. If Mr. Lackey took four of those pills, one about 6:00 one at 7:00, another in a half hour or about then, and another at 9:30 * * * as to what would be the effect upon him in his head, in his feeling after that, I would say that if he took it according to that it would be to me, or to most people, quite devastating.

"As to what way it would affect him, it would be a depressant, the heart and everything. The effect upon his powers of perception would be poor * * * very poor, and upon his powers of memory, the same, poor. I mean by that it would certainly deaden his perception and deaden his memory * * * Yes, I definitely have an opinion satisfactory to myself as to the effect upon the rationality of Mr. Lackey from the taking of these pills in the manner he stated he had taken them and as to what that effect would be. I think he would be irrational; I'm sure he would."

Then on cross-examination Dr. Keever continued: "The date of the prescription was July 12, 1958. Yes, there is a narcotic in those pills. Definitely, I would say that the quantity of those narcotics which Mr. Lackey took together with the quantity of alcoholic beverage which he said he took would make him drunk."

And on re-direct examination the doctor concluded his testimony by saying, "Yes, I have an opinion as to whether the pills alone would have produced the intoxicating effect, leaving out the question of whiskey; and my opinion is that definitely it would. No, I did not at any time reveal to Mr. Lackey the ingredients of those pills."

When defendant rested his case his attorneys presented to the judge in writing and in apt time certain requests for special instructions, which the judge declined to give. Exception.

After hearing the evidence for the State and for defendant, and the charge of the court, the jury returned a verdict of guilty. Thereupon the court entered judgment that defendant pay "a fine of $100 and the costs, and that he surrender his license to the clerk of court to be transmitted to the Department of Motor Vehicles in Raleigh as provided by law * * *." Defendant gave notice of appeal, and appealed therefrom to Supreme Court and assigns error.

*Attorney General Seawell, Assistant Attorney General McGalliard for the State.*

*Young M. Smith for defendant, appellant.*

WINBORNE, C. J. Among the assignments of error presented by defendant is that based upon exception to the closing instruction given by the court to the jury in this language: "The court further in-

structs you that if you find the facts to be as all of this evidence tends to show and you so find those facts beyond a reasonable doubt, then it would be your duty to return a verdict of guilty as charged."

Decisions of this Court indicate that the exception is well taken. See *S. v. Godwin,* 227 N.C. 449, 42 S.E. 2d 617, where as here there is no admission or presumption calling for explanation or reply on the part of defendant. There the court said that the peremptory character of the instruction, almost identical with the above, would seem to be in excess of approved practice. And it is there declared that it is only in rare instances that a verdict may be directed for the State in a criminal prosecution.

Moreover, "the plea of not guilty disputes the credibility of the evidence, even when uncontradicted, since there is the presumption of innocence, which can only be overcome by the verdict of a jury." *S. v. Riley,* 113 N.C. 648, 18 S.E. 168. See also *S. v. Blue,* 219 N.C. 612, 14 S.E. 2d 635, and cases cited. And this has been held to be the correct doctrine, though guilt may be inferred from the defendant's own testimony as in *S. v. Green,* 134 N.C. 658, 46 S.E. 761.

For error thus appearing there must be a

New trial.